# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TYSHAWN McDADE,
    *Petitioner*,

    v.

UNITED STATES OF AMERICA,
    *Respondent*.

No. 3:17-cv-02034 (JAM)

## ORDER DENYING MOTION
## FOR POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. § 2255

Petitioner Tyshawn McDade moves for post-conviction relief pursuant to 28 U.S.C. §
2255. I conclude that there is no merit to McDade's claims, and therefore I will deny the motion.

### BACKGROUND

McDade was charged with participation in a conspiracy to distribute crack cocaine in the
North End of Hartford. The conspiracy's alleged leader was Melkuan Scott, who pleaded guilty.
McDade was convicted following several days of trial at which the Government presented
evidence including, but not limited to, the testimony of its case agent identifying many of the
alleged conspiracy participants; multiple wiretap conversations involving McDade, Scott, and
co-defendant Arthur Stanley, in which they spoke in explicit terms about cocaine transactions;
the testimony of other law enforcement agents who observed McDade with Scott and other
alleged co-conspirators; the testimony of cooperating witness Ricardo Howe who stated that he
twice observed McDade receive six "treys" (a total of 126 grams of cocaine base) from Scott in
the summer of 2013; and the testimony of a confidential source who engaged in a recorded
purchase of 28.7 grams of crack cocaine from McDade and Scott on March 3, 2014, and in

anticipation of a future half-kilogram transaction. *See generally United States v. McDade*, 2015
WL 5157201 (D. Conn. 2015), *aff'd*, 663 F. App'x 34 (2d Cir. 2016).

McDade was convicted on two charges. The first was for conspiracy to distribute more
than 280 grams of cocaine base (crack cocaine), a charge that subjected him to a mandatory
minimum term of at least 10 years of imprisonment. The second charge was for distributing
cocaine base on March 3, 2014. Doc. #1-1 (judgment and conviction order).

I denied McDade's post-trial motions. I described how the "[t]he trial evidence against
[him] was overwhelming and easily sufficient to establish his guilt beyond a reasonable doubt as
to both counts." *McDade*, 2015 WL 5157201, at *2. As to the conspiracy count, I noted that
McDade "does not contest the evidence that there existed a crack cocaine distribution conspiracy
involving Melkuan Scott and many others." *Ibid.* I noted that McDade did not "meaningfully
contest the sufficiency of the evidence showing that he discussed and engaged in crack cocaine
transactions well in excess of 280 grams of cocaine and often spoke about these transactions on
wiretapped telephone calls." *Ibid.*

As to the distribution count, I described how "the Government presented the testimony of
a confidential source who personally bought and received 28.7 grams of crack cocaine from
defendant and Melkuan Scott on March 3, 2014." *Ibid.* "The entire transaction was audio
recorded, and—although Melkuan Scott did the talking—the confidential source testified that it
was [McDade] who handed him the crack cocaine and accepted his payment," and "[t]he
reliability of the confidential source's testimony is corroborated not only by the audio recording
but by separate testimony of a law enforcement agent who saw [McDade] enter Percy Auto Body
shortly before the transaction." *Ibid.*

On August 12, 2015, I sentenced McDade principally to concurrent terms of 132 months (11 years) of imprisonment on both counts. The sentence was below the range recommended under the U.S. Sentencing Guidelines. The Second Circuit affirmed the judgment of conviction and sentence. *See* 663 F. App'x 34 (2d Cir. 2016).

McDade has filed a *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255 principally alleging that he was denied his constitutional right to effective assistance of counsel. Doc. #1. The Government has filed an objection to the motion, along with an affidavit from McDade's trial and appellate counsel—Vito Castignoli. Docs. #8, #9. McDade in turn has filed a reply to the Government's response. Doc. #17.

## DISCUSSION

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected if his "sentence was imposed in violation of the Constitution or laws of the United States or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The prisoner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

A claim of ineffective assistance of counsel is reviewed in light of the well-established, two-part standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must show deficient performance—that counsel's conduct "fell below an objective standard of reasonableness" established by "prevailing professional norms"—and, second, a defendant must show that this deficient performance caused prejudice. *Id.* at 687–88.

As to the issue of whether counsel's performance fell below the constitutional minimum, a court must be "highly deferential" to the strategic choices of counsel and must "strongly

presume[ ]" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90. "This presumption is overcome only if counsel failed to act reasonably considering all of the circumstances." *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (internal quotations omitted). A court "must avoid the distorting effects of hindsight and consider the lawyer's perspective at the time the decision was made." *Ibid.* (internal quotations omitted). "If the attorney made a strategic choice after thoughtful consideration, that decision will be virtually unchallengeable." *Ibid.* (internal quotations omitted).

As to the issue of whether any deficient performance by counsel caused prejudice, a court must consider whether "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020) (quoting *Strickland*, 466 U.S. at 690). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Garner v. Lee*, 908 F.3d 845, 862 (2d Cir. 2018) (quoting *Strickland*, 466 U.S. at 694).

### *Ineffective assistance with respect to testimony of Ricardo Howe*

McDade argues that his counsel was ineffective in various ways with respect to the testimony against him of a cooperating witness named Ricardo Howe. Doc. #1 at 4-12. According to McDade, Howe was disclosed as a cooperating witness on April 28, 2015 shortly before trial, and the precise nature of his testimony against McDade was not revealed until the first day of trial evidence on May 11, 2015 when the prosecution disclosed an FBI interview report. Doc. #1 at 3; *see also* Doc. #9 at 15 (chronology of disclosures relating to Ricardo Howe).

To the extent that McDade complains that the interview report was not disclosed until the trial had started and that the Court denied McDade's continuance motion, McDade cannot blame his trial counsel who in fact moved for a continuance. To the extent that McDade faults his counsel for failing to press a challenge on appeal to the denial of the continuance, his counsel's affidavit explains how he made a quintessentially tactical choice to pursue what he believed to be stronger issues on appeal and why he reasonably concluded that an appeal to challenge the denial of the continuance would not likely succeed. Doc. #8 at 3 (¶¶ 26-27).

Nor does McDade show any reasonable probability of prejudice from his counsel's decision not to further press his continuance claim. McDade falsely states that "[t]his entire case against [him] was based on the testimony of Ricardo Howe." Doc. #1 at 8. In fact, McDade was convicted on the basis of a wide range of evidence including his crack cocaine distribution transaction with Scott on May 3, 2014, and wiretapped conversations in which he made highly incriminating statements.

Nor does McDade even dispute that he engaged in the drug transactions at issue with Howe. Instead, he claims that he "told his counsel that it was powder cocaine and not crack cocaine." Doc. #1 at 12. In view that there was ample additional drug dealing evidence against McDade and that he tellingly concedes doing drug deals with Howe, McDade has failed to show how any denial of a continuance for further investigation of Howe caused him any prejudice— that is, he does not explain how the grant of a continuance would have allowed him to show that the substance at issue was powder cocaine rather than crack cocaine as Howe testified.

Moreover, a trial court's denial of a continuance is subject to a deferential abuse-of-discretion standard of review on appeal. *See United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013). McDade does nothing to show that an appeal on the continuance issue had any reasonable

probability of success absent any indication that the prosecution intentionally delayed disclosure of information about Howe and his anticipated testimony.

Alternatively, McDade argues that the prosecution's "late disclosure of Ricardo Howe's statement interfered with the plea negotiation process and denied [McDade] effective assistance of counsel." Doc. #1 at 4. He claims that if he "had known how incriminating Howe's statement and testimony was going to be before trial, he would have accepted a plea bargain offered by the [G]overnment." *Id.* at 6.

But again McDade does not show why any prejudice he suffered was the fault of his counsel. He does not describe how his trial counsel stood in the way of any plea bargain opportunities after the disclosure of Howe as a witness and the subsequent disclosure of Howe's interview report. Although he argues that "he lost the opportunity to take the more favorable sentence offered in the plea," *id.* at 8, he does not describe what that "favorable sentence" would be. According to his counsel's affidavit (which McDade generally disputes but without any particularity), McDade was offered two plea agreements, both of which he rejected. Doc. #8 at 2 (¶ 11). Both plea agreements contemplated a sentencing guidelines range that includes the 132-month sentence that the Court ended up imposing. *Ibid.*

To the extent that McDade complains that he would have accepted the last plea offer that was made on May 5 if he had known the contents of Howe's statement which was disclosed several days later on May 11, he does not explain how this missed opportunity is in any way the fault of his trial counsel. His trial counsel was not responsible for any late disclosure of Howe's interview report and the loss of any prior opportunity to accept a guilty plea. In any event, as his trial counsel attests, McDade "was still not interested in a change of [p]lea" even after disclosure of Howe's incriminating interview report. *Id.* at 2 (¶ 17).

McDade relies on *Lafler v. Cooper*, 566 U.S. 156 (2012), but the facts here are clearly distinguishable from *Lafler* where the defendant was impeded by errant advice from his counsel in agreeing to a favorable plea. McDade does not allege that his trial counsel did anything to misadvise him about any opportunity he may have had to accept a guilty plea.

### *Failure to call Melkuan Scott as witness*

McDade next argues that his trial counsel was ineffective because he failed to call Melkuan Scott as a witness and who he claims would have testified that the transactions involving Howe were powder cocaine rather than crack cocaine. Doc. #1 at 12-15. But as trial counsel's affidavit states, counsel "did not consider calling Scott as a witness" because he wished "to distance" McDade from Scott who was the overall leader of the conspiracy and because he believed "to a certainty that Scott would have exercised his rights against self incrimination if called as a witness to preserve his rights at sentencing." Doc. #8 at 3 (¶ 21). Although McDade attests that "Scott would have testified that the cocaine involved in the drug transactions described by Ricardo Howe was powder cocaine and not crack cocaine," Doc. #1 at 21, McDade furnishes no support for this claim about how he would know what Scott would say or that Scott would be willing to testify.

In any event, the decision of which witnesses (other than a defendant) who will be called to testify at trial is committed to the sound discretion of defense counsel rather than the defendant. "The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (internal quotations omitted). It was well within the reasonable discretion of trial counsel here to decline to call Scott so that he might do as much as possible to distance McDade

from the drug gang's undisputed leader and whose willingness to testify at all could be very reasonably doubted.

Indeed, in view of the undisputed evidence that Scott and McDade jointly engaged in a deal for crack cocaine (not powder cocaine) with another cooperating witness on March 3, 2014 (and for which McDade was separately convicted by the jury in addition to its conspiracy verdict), McDade offers no plausible reason why trial counsel could have reasonably believed that a jury would believe Scott if he testified that the drug transactions with Howe involved powder cocaine rather than crack cocaine. Instead, calling Scott to the stand could have demolished any hopes that McDade had to prevail on his buyer-seller defense that trial counsel reasonably believed to be the best defense to the conspiracy charge (which was the most serious charge with a 10-year mandatory minimum sentence).

### *Failure to argue for prison credit*

McDade argues that his trial counsel "was ineffective at sentencing when he failed to argue that the Court had authority to give [McDade] credit for time served" under U.S.S.G. § 5G1.3. Doc. #1 at 17. As the Government notes, however, McDade's trial counsel in fact asked the Court to award prior prison credit but the Court did not have the legal authority to do so. Doc. #9 at 20 (citing 18 U.S.C. § 3585(a)).

Moreover, the Government asserts without contradiction that the time McDade was in state custody from March 2014 until November 2014 was for violation of his state parole. *Id.* at 21 n.3. McDade does not show why these interim months when he was in state custody for a parole violation stemming from a prior state crime were required to be credited under § 5G1.3(b) against his federal sentence. *See United States v. Hamilton*, 583 F. App'x 572, 573 (8th Cir. 2014) (concurrent sentencing under § 5G1.3(b) not required for time served due to state parole

violation even though based on same conduct forming the basis for subsequent federal sentence); *Bowden v. United States*, 2008 WL 4755844, at *3 (D. Conn. 2008) (same); *cf. United States v. Garcia-Hernandez*, 237 F.3d 105, 107 (2d Cir. 2000) (court not required under precedecessor provision of U.S.S.G. § 5G1.3(b) to credit time defendant served in state custody for violation of parole even if the parole violation is based on the same conduct leading to the federal conviction). To the extent that I otherwise might have had discretion under any other provision of § 5G1.3 to credit McDade for the time that he was subject to imprisonment because of his violation of state parole conditions, I would not have credited him with this time (whether directly or by means of variance or departure) because this would have vitiated the separate sanction intended for a violation of state parole.

### Sentence in retaliation for exercise of constitutional right to trial

McDade argues that he was sentenced more punitively than at least one of his other co-defendants and that the reason for this disparity is because of his choice to exercise his constitutional right to a jury trial. Doc. #1 at 16-18. This argument lacks merit. As a result of his conviction for conspiring to distribute more than 280 grams of cocaine, McDade was subject to a mandatory minimum prison term of 10 years of imprisonment. The co-defendant to whom McDade compares himself is not a similarly situated comparator, because he was not convicted of an offense that required a mandatory minimum term of 10 years of imprisonment.

McDade received a sentence of 11 years imprisonment, a sentence well below the Sentencing Guidelines range of 151 to 188 months. Doc. #9 at 9-10. McDade points to nothing in the record to suggest that his sentence was a product of any intention to penalize the exercise of his constitutional right to trial.

*No evidentiary hearing*

Lastly, I conclude that an evidentiary hearing is not required. No such hearing is required unless a petitioner makes a plausible claim of ineffective assistance of counsel or other legal grounds for relief and where an evidentiary hearing would promote a resolution of the claim. *See Lopez v. United States*, 792 F. App'x 32, 38 (2d Cir. 2019). Moreover, "when the judge who tried the underlying proceedings also presides over a Section 2255 motion, a full-blown evidentiary hearing may not be necessary." *Ibid.* (internal quotations omitted). Here, because McDade has not alleged plausible grounds for relief, there is no cause to conduct an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, the Court DENIES the motion of petitioner Tyshawn McDade for post-conviction relief pursuant to 28 U.S.C. § 2255. Because McDade has not made a substantial showing of a denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), no certificate of appealability shall enter.

It is so ordered.

Dated at New Haven this 4th day of January 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge